NOT DESIGNATED FOR PUBLICATION

No. 127,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRY L. ADAMS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; COURTNEY MIKESIC, judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.


*Terry L. Adams*, appellant pro se.


*Kayla L. Roehler*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., MALONE and COBLE, JJ.


MALONE, J.: Terry L. Adams appeals the district court's summary denial of his pro se motion to dismiss, which the district court treated as his fourth K.S.A. 60-1507 motion. The district court denied Adams' motion without a hearing, finding that it was untimely and successive and that Adams failed to show manifest injustice or exceptional circumstances to overcome these procedural limitations. After reviewing the record and the parties' arguments, we find no error and affirm the district court's judgment.


1

FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Adams was convicted of first-degree felony murder, aggravated battery, aggravated assault, and criminal possession of a firearm and was sentenced to life imprisonment. These convictions stemmed from his direct involvement in a gang-related fatal drive-by shooting, the facts of which are largely irrelevant to this appeal. On direct appeal to the Kansas Supreme Court, Adams argued that the State presented insufficient evidence to support his convictions and that the district court erroneously overruled several *Batson* challenges. *State v. Adams*, 269 Kan. 681, 8 P.3d 724 (2000); see *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Finding no error, the Supreme Court affirmed Adams' convictions on July 14, 2000. *Adams*, 269 Kan. at 681. The appellate mandate was issued the next month.

*Adams' first postconviction motion*

In 2008, Adams filed an untimely K.S.A. 60-1507 motion in which he claimed his appellate counsel's failure to petition the United States Supreme Court for certiorari constituted ineffective assistance of counsel. *Adams v. State*, No. 104,758, 2011 WL 5833481 (Kan. App. 2011) (unpublished opinion). After holding an evidentiary hearing on whether Adams could establish manifest injustice, the district court denied the motion as untimely filed, and this court affirmed. 2011 WL 5833481, at *3.

*Adams' second postconviction motion*

Two years later, Adams filed another K.S.A. 60-1507 motion and argued: (1) instructional error; (2) denial of his speedy trial rights; (3) violation of his rights to equal protection; (4) a *Brady v. Maryland* violation, see 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); (5) his appellate counsel's failure to raise issues in his direct appeal; (6) his appellate counsel's failure to raise issues in his appeal from the denial of his prior K.S.A. 60-1507 motion. *Adams v. State*, No. 111,099, 2015 WL 4577350 (Kan. App.

2

2015) (unpublished opinion). The district court summarily denied the motion and this court affirmed, finding the motion was untimely and successive. 2015 WL 4577350, at *1.

*Adams' third postconviction motion*

In 2018, Adams filed a third K.S.A. 60-1507 motion, arguing (1) that the prosecutor—Terra Morehead—coerced testimony from certain witnesses, failed to disclose material exculpatory evidence, and engaged in other actions constituting prosecutorial misconduct, (2) that his trial counsel and prior 1507 counsel were ineffective, and (3) that Detective Roger Golubski had knowingly presented false testimony. The district court summarily denied the motion. Adams filed a pro se notice of appeal and the district court appointed an attorney. But Adams' appointed counsel told the district court that he could not ethically raise any valid issues on Adams' behalf. The appeal was never docketed and was eventually dismissed by the district court.

*Adams' current postconviction motion*

On November 8, 2022, Adams filed a "Motion to Dismiss," alleging the "charges and case against him" should be dismissed because (1) a detective involved in his case, Golubski, was under investigation and facing charges for misconduct; (2) certain witnesses told Golubski that Adams was not at the scene of the shooting, (3) one of the testifying witnesses had prior criminal history that was not disclosed to the defense, and (4) there were *Brady* violations. On January 30, 2023, Adams filed an "Amended Motion to Dismiss," which included no substantive changes to the original motion.

On March 14, 2023, the district court summarily denied Adams' motion. The district court treated Adams' motion to dismiss as a fourth K.S.A. 60-1507 motion. After summarizing the procedural history of Adams' case and his various attempts to

3

collaterally attack his convictions and sentence, the district court explained that Adams' motion was untimely and successive and that he had failed to establish manifest injustice or exceptional circumstances to bypass those procedural limitations. The district court also noted that Adams had raised the same issues in his prior motions. Adams timely appealed the district court's judgment.

ANALYSIS

On appeal, Adams argues he is entitled to an evidentiary hearing on his various claims of prosecutorial misconduct, ineffective assistance of counsel, and due process violations because he established both manifest injustice to excuse his delayed filing and exceptional circumstances to warrant consideration of his successive motion. The State disagrees, maintaining that the district court did not err in summarily denying the motion.

To begin, the motion Adams filed was labeled "Motion to Dismiss" but the district court treated it as a K.S.A. 60-1507 motion and Adams calls the motion a K.S.A. 60-1507 motion in his brief. Kansas courts have long recognized that pro se motions should be liberally construed to give effect to a document's contents rather than any labels and forms used to articulate a defendant's arguments. *State v. Richardson*, 314 Kan. 132, 144, 494 P.3d 1280 (2021). Whether a pro se pleading was properly construed is a question of law subject to unlimited review. 314 Kan. at 144. But here neither party challenges that the motion was, in substance, a K.S.A. 60-1507 motion, and a review of the motion shows that it was properly construed as such.

A district court has three options when handling a K.S.A. 60-1507 motion. First, it can find that the motions, files, and case records conclusively show that the movant is not entitled to any relief and summarily deny the motion. Second, it can find that there is a potentially substantial issue and order a preliminary hearing to explore the matter. Finally, the court may determine from the motion, files, records, or preliminary hearing

4

that a substantial issue warrants a full evidentiary hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

When the district court summarily denies a movant's K.S.A. 60-1507 motion, this court exercises unlimited review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). This is because an appellate court is in the same position as the district court to determine whether motion, files, and record show that the movant is entitled to relief. See *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). "'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

*Adams' motion is untimely with no showing of manifest injustice.*

The district court dismissed Adams' motion as untimely and successive, noting that his claims had been raised in prior motions. As to timeliness, Kansas law requires a person to bring a K.S.A. 60-1507 motion within one year of the final appellate mandate in their direct appeal. See K.S.A. 2023 Supp. 60-1507(f)(1); Supreme Court Rule 183(c)(4) (2024 Kan. S. Ct. R. at 241). A court must dismiss a motion as untimely if, "upon its own inspection of the motions, files and records of the case, [it] determines the time limitations under this section have been exceeded and that the dismissal of the motion would not equate with manifest injustice." K.S.A. 2023 Supp. 60-1507(f)(3). The rationale for the one-year time limitation is to maintain finality in the criminal appeals process. See, e.g., *Toney v. State*, 39 Kan. App. 2d 944, 948, 187 P.3d 122 (2008).

There is no dispute that Adams' motion was untimely. Adams filed his current motion in 2022—more than 20 years after the decision and mandate affirming his

convictions on direct appeal, well outside the one-year time limitation provided by K.S.A. 2023 Supp. 60-1507(f)(1). To overcome this statute of limitations, Adams has the burden to show, by a preponderance of the evidence, that consideration of his untimely motion is necessary to prevent manifest injustice. K.S.A. 2023 Supp. 60-1507(f)(2). This exception is narrow: K.S.A. 2023 Supp. 60-1507(f)(2)(A) provides that "the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." If Adams fails to show manifest injustice under either of these definitions, Kansas law requires dismissal of his motion. K.S.A. 2023 Supp. 60-1507(f)(3).

Adams has offered no concrete explanation—either before this court or the district court—as to why he filed his most recent motion more than two decades after the time limitation expired. On appeal, he alleges actual innocence. For an innocence claim to warrant extending the filing deadline for a K.S.A. 60-1507 motion, a movant must show that "it is more likely than not that no reasonable juror would have convicted the prisoner *in light of new evidence*." (Emphasis added.) K.S.A. 2023 Supp. 60-1507(f)(2)(A).

Adams' motion sets forth four assertions, which he contended warrant the dismissal of the charges and case against him:

> "1. Detective Roger Golubski is under investigation for misconduct. He is also being charged with 6 counts of depravation of civil rights, and they are looking into every case he has his name on for misconduct and abuse, including arresting and framing them based on false evidence from informants that would be threatened if they didn't cooperate. Most of them have been incarcerated for 20 or more years.
>
> "2. Detective Roger Golubski took the witness statement, of Dywand Akins. Mr. Akins stated that Terry Adams was in the car at 11:30 May 23rd 1997. According to the affidavit of witnesses, Vickie S. Brown, Dekoven Llyoyd, Vera Davis, and officer Carlton Beatty the Petitioner Terry L. Adams was with them at the house

6

until 3:30 PM of May 23rd 1997. There is no way the defendant could be somewhere else and not be with his witnesses. Detective Rogers Goulbski [knew] this and still kept with his statement while on the stand.

"3.      Witness Dywand Akins had a criminal history of theft, Case Number 97CR1427 and Burglary of a Motor Vehicle. None of these charges were given to the defenses. This is a Brady/Giglio Violation by withholding evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

"4.      According to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) *(Brady/Giglio Violations)*, if any law enforcement officer is in possession of discoverable information, the prosecution has a positive obligation to provide the information even if the defense does not make such a request. *United States v. Agurs*, 427 US. 97, 108[, 96 S. Ct. 2392, 49 L. Ed. 2d 342] (1976) and *State v. Nguyen*, 251 Kan. 69, 82, [833 P.2d 937] (1992)."

On appeal, Adams alleges that he was entitled to an evidentiary hearing on his motion because he established a colorable claim of actual innocence. He bases this assertion on a number of alleged errors and deficiencies that were not included in his present motion, including (1) that the prosecutor, Morehead, committed multiple acts that constituted prosecutorial error and deprived him of various constitutional rights, and (2) that the court erred in instructing the jury regarding its consideration of eyewitness testimony. These issues were not raised before the district court and Adams does not acknowledge his failure to raise them or otherwise argue that any exceptions apply to justify this court's consideration of them. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Because Adams provides no justification for this court to consider these allegations for the first time on appeal, we decline to address them.

Turning to the four claims that Adams raised before the district court, he has presented no new evidence that would support his claim of actual innocence. The record shows that Adams had raised these claims, which relate to the conduct of Morehead and Golubski, in a prior K.S.A. 60-1507 motion. In that motion filed in 2018, Adams made

allegations about the conduct of Morehead and Golubski, attempting to connect other cases in which the prosecutor and detective have been found to have committed various acts of misconduct. In its order dismissing the 2018 motion, the district court noted that Adams had merely presented conclusions, not new evidence, and also explained that his motion appeared to be an attempt to impermissibly pursue a second appeal.

Although Adams did not appeal the dismissal of the 2018 motion, he appears to be trying to relitigate some of the issues he included in the earlier motion. But as the district court noted in its order dismissing Adams' motion, a review of the record suggests that none of the claims Adams makes would have affected his trial, especially considering that Golubski was not a witness at trial. Adams' motion mentions the affidavits of four witnesses to support his claim that he was not present at the scene of the shooting. Adams did not attach these affidavits to his motion or otherwise present them to the district court to support his current motion. Our review of the extensive record reveals an affidavit of Vicki S. Brown dated June 14, 2011, stating that Adams was with her at the time of the shooting on May 23, 1997. This affidavit was attached to Adams' 2018 motion. The affidavit mentions other witnesses—Dekoven Lloyd, Verna Davis and Carlton Beatty— who could support this alibi. This affidavit shows that Adams made this claim in his prior motion and is not new evidence to support his claim of actual innocence. Adams does not assert that Golubski prevented these witnesses from coming forward in earlier proceedings. In short, Adams has failed to establish his claim of actual innocence—that "it is more likely than not that no reasonable juror would have convicted [Adams] in light of new evidence." K.S.A. 2023 Supp. 60-1507(f)(2)(A).

*Adams' motion is successive with no showing of exceptional circumstances.*

Under K.S.A. 2023 Supp 60-1507(c), a district court need not entertain a second or successive motion for relief unless the alleged errors affect the movant's constitutional rights and exceptional circumstances justify consideration of their claims. *State v. Brown*,

318 Kan. 446, 448, 543 P.3d 1149 (2024). Exceptional circumstances have been defined as those "'unusual events or intervening changes in the law'" which prevented a movant from including the issue in their prior K.S.A. 60-1507 motion. 318 Kan. at 448. But the motion cannot raise an issue that should have been raised on direct appeal. 318 Kan. at 448-49. Unlike timeliness—a statutory prerequisite to consideration of a K.S.A. 60-1507 motion—a district court has discretion about whether to consider successive filings. See K.S.A. 2023 Supp. 60-1507(c) ("The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.").

Adams rests his claim of exceptional circumstances on his assertion that he is raising a colorable claim of actual innocence. But as the district court noted, Adams raised the same claims in his prior motions and it does not appear that they affected the outcome of his trial. Based on the scant content of his motion and the lack of any support for Adams' assertion of actual innocence, we find that Adams failed to establish exceptional circumstances to circumvent the successive filing.

CONCLUSION

The summary denial of a K.S.A. 60-1507 motion is appropriate when the motion is filed more than a year after the final appellate mandate was issued in the movant's direct appeal or when the motion is successive. A movant may overcome these limitations and obtain review of their untimely and successive motion if they establish that manifest injustice and exceptional circumstances excuse those procedural deficiencies. After reviewing Adams' motion and the record, we conclude the district court did not err in finding that Adams failed to satisfy either exception. Thus, the district court did not err in summarily denying Adams' fourth postconviction motion.

Judge Kathryn A. Gardner offers a compelling separate opinion about this court's awareness of misconduct committed by Golubski and Morehead in other cases. We

9

understand the Wyandotte County district attorney has pledged to investigate all cases in the district involving claims of misconduct against Golubski and Morehead. Perhaps new evidence may come to light in Adams' case as a result of further investigation. But until Adams presents new evidence to the court supporting a colorable claim of actual innocence, we must agree with the district court that his motion is untimely.

Affirmed.

* * *

GARDNER, J., concurring: I agree with the denial of this motion but write separately to assure Adams of the court's awareness of certain matters to which he alludes in his motion—Golubski's alleged misconduct in framing defendants based on false evidence from informants whom he had threatened.

> "(b) Judicial notice may be taken without request by a party, of … (3) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute, and (4) specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." K.S.A. 60-409 (b).

"Additionally, judicial notice may be taken of matters of public record in other courts or governmental bodies. See *Cities Service Gas Co. v. State Corporation Commission*, 192 Kan. 707, 714, 391 P.2d 74 (1964); *Board of County Com'rs of Shawnee County v. Brookover*, 198 Kan. 70, 76, 422 P.2d 906 (1967)." *Matter of Nwakanma*, 306 Kan. 704, 706, 397 P.3d 403 (2017) (taking judicial notice of the records of United States District Court for the District of Kansas).

Cases in the United States District Court for the District of Kansas give me pause in denying this motion, given Adams' allegations against Kansas City, Kansas Police

10

Department Detective Golubski. See *McIntyre v. Unified Gov't of Wyandotte Cnty. and Kansas City, Kansas*, No. CV 18-2545-KHV, 2022 WL 2072721, at *7 (D. Kan. 2022) (denying summary judgment, finding a reasonable jury could infer that Golubski fabricated a narrative which implicated McIntyre and coerced witnesses to give statements that corroborated a narrative that Golubski knew was false; and listing 15 ways a jury could reasonably find that Golubski conspired with other defendants to deprive McIntyre of rights under the Fourth, Fifth and Fourteenth Amendments to be free from unreasonable searches and seizures, malicious prosecution, coercion, deprivation of liberty without due process of law and to a fair trial).

Golubski was later charged in federal court with depriving S.K. and O.W. of a right to bodily integrity when, acting under color of law, he allegedly committed and attempted to commit acts of kidnapping and aggravated sexual abuse for over five years. *United States v. Golubski*, No. 22-CR-40055-TC-1, 2024 WL 3202345, at *5 (D. Kan. 2024). Those acts related to Golubski's modus operandi of "allegedly us[ing] his authority to threaten the lives and liberty of potential victims that were vulnerable to his entreaties." *United States v. Golubski*, No. 22-CR-40055-TC-1, 2024 WL 1199256, at *8 (D. Kan. 2024).

The court granted the Government's pretrial motion in that case to admit the testimony of seven other alleged victims. In finding the charged and other acts similar, the court found:

> "[E]ach involve nearly the same alleged set of forced sex acts and were perpetrated using the same set of tactics: employment of information only a police officer would know to construct an offer of aid to a vulnerable victim, seclusion of the victim, use of violence, similar threats of death or imprisonment of a family member, and follow-up visits to ensure silence. *See* Doc. 50 at 10–11. And each of the victims fit a certain profile: a Black woman made vulnerable by her or her family members' interactions with the criminal justice system within the community where Golubski served." 2024 WL 1199256, at *5.

11

On the morning his federal trial was to begin, Golubski apparently chose to take his own life rather than stand trial. https://www.nbcnews.com/news/us-news/roger-golubski-found-dead-rcna182455.

Equally concerning are facts showing that Adam's prosecutor, Terra Morehead, abused judicial process in Wyandotte County by threatening or intimidating potential witnesses, with the effect of jailing at least one innocent person. See, e.g., *United States v. Orozco*, 291 F.Supp.3d 1267, 1277, 1280 (D. Kan. 2017) (finding "that AUSA Morehead violated Defendant's Sixth Amendment right to present a defense" by "threatening or intimidating potential witnesses and that such witnesses otherwise would have given testimony both favorable to the defense and material"; vacating Orozco's convictions and dismissing the underlying indictment with prejudice); *McIntyre v. Unified Gov't of Wyandotte Cnty. and Kansas City, Kansas*, No. 18-CV-02545-JAR-KGG, 2019 WL 2207953, at *2 (D. Kan. 2019) (Stating "in a highly publicized case, AUSA Morehead [was] accused of improper witness interference in securing a wrongful conviction in *State v. McIntyre*, a case in which an innocent man was recently exonerated after serving 23 years for a murder he did not commit.") .

In April 2024, the Kansas Supreme Court disbarred Morehead from the practice of law in Kansas. *In re Morehead*, 318 Kan. 709, 546 P.3d 1227 (2024). Morehead chose to surrender her license rather than rebut allegations including that she had colluded with Golubski to frame McIntyre for a double homicide. https://www.kshb.com/news/local-news/kansas-supreme-court-orders-disbarment-of-former-kansas-city-area-attorney-terra-morehead#.

But regardless of the weight of such concerns, our denial of this motion is compelled by law, which requires the movant to state an evidentiary basis in support of his K.S.A. 60-1507 claims or to point us to where that evidence is in the record, *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Adams has not done so. And

12

because Adams claims his innocence warrants extending the one-year deadline for filing his K.S.A. 60-1507 motion, he must show that "it is more likely than not that no reasonable juror would have convicted [him] in light of new evidence." (Emphasis added.) K.S.A. 2023 Supp. 60-1507(f)(2)(A). As the majority properly explains, we have no new evidence, thus Adams' motion must be denied.